UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRANDON BELCHER,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | CASE NO. 5:22-CV-01903-JRA<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Brandon Belcher challenges the decision of the Commissioner of Social Security denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On October 24, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Oct. 24, 2022). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Mr. Belcher filed for DIB and SSI in May 2020, alleging a disability onset date of April 17, 2020. (Tr. 384-87; 393-94). The claims were denied initially and on reconsideration. (Tr. 298-307; 310-19). Mr. Belcher then requested a hearing before an administrative law judge. (Tr. 348-49).

1

Mr. Belcher (represented by counsel) testified before the ALJ on February 25, 2021. (Tr. 230-64). On June 2, 2021, the ALJ issued a written decision finding Mr. Belcher not disabled. (Tr. 49-66).

Mr. Belcher submitted additional medical records to the Appeals Council and requested review of the ALJ's decision. (*See* Tr. 2). The Appeals Council denied Mr. Belcher's request for review and concluded the additional medical records did not "show a reasonable probability that it would change the outcome of the decision" or otherwise did not relate to the period at issue, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Mr. Belcher timely filed this action on October 24, 2022. (ECF #1).

FACTUAL BACKGROUND

I.   PERSONAL AND VOCATIONAL EVIDENCE

Mr. Belcher was 45 years old on the alleged onset date, and 46 years old at the time of the administrative hearing. (*See* Tr. 298). He completed high school and has previously worked as a school janitor and a dishwasher. (Tr. 239-41).

II.  RELEVANT MEDICAL EVIDENCE

A.   Evidence Pre-dating the Administrative Hearing

Before his alleged onset date, Mr. Belcher underwent two lumbar spinal surgeries. (Tr. 616). On May 4, 2020, Mr. Belcher met with Daria Krivosheya, M.D., for a neurosurgical consultation. (Tr. 615). There, Mr. Belcher complained of low back pain radiating into his left groin region and weakness, numbness, and tingling in his bilateral lower extremities, beginning in March 2018. (Tr. 616). He reported exacerbation with physical activity and an inability to feel the pedals of his car while driving. (*Id.*). Physical examination revealed diminished motor strength in

2

hip flexion, knee flexion and extension, plantarflexion, and dorsiflexion; positive Hoffmann's sign and ankle clonus present on the right side; and unsteadiness when performing tandem gait. (Tr. 618).

Dr. Krivosheya reviewed a lumbar MRI, dated March 30, 2020, and found advanced left-sided foraminal narrowing at L3-L4; broad-based posterior disc osteophyte complex at L4-L5 with mild to moderate narrowing of the central canal and significant foraminal stenosis; and a rounded fluid signal intensity focus along the posterior margin of the L4-L5 facet joint with edema present in the adjacent soft tissue, possibly representing a small ganglion. (Tr. 618-19). Dr. Krivosheya also reviewed a lumbar CT scan, dated March 30, 2020, and found severe left foraminal stenosis due to disc encroachment by intervertebral fusion device and osteophytes; and left L3 spondylolysis and attendant grade 1 spondylolisthesis. (Tr. 619). Dr. Krivosheya determined the lack of fusion with pseudoarthrosis at L3-L4 with concurrent severe stenosis of the exiting nerve root required surgical revision. (*Id.*). She ordered another cervical MRI and X-rays to exclude the possibility that cervical stenosis was contributing to Mr. Belcher's lower back and leg presentation. (*Id.*).

The cervical MRI, dated May 18, 2020, revealed advanced degenerative disc disease at C5-C6 and to a lesser degree at C6-C7; at C5-C6, a posterior disc-osteophyte complex flattened the ventral cord causing several central canal stenosis and severe bilateral foraminal narrowing was present; at C6-C7, a posterior disc-osteophyte complex caused moderate central canal stenosis with severe bilateral foraminal narrowing; at C4-C5, a posterior disc bulge minimally flattened the ventral cord causing mild central canal stenosis with mild right foraminal narrowing; and at C3-C4, a mild midline disc protrusion minimally flattened the ventral cord causing minimal central canal stenosis. (*Id.*).

3

On June 8, 2020, Dr. Krivosheya reviewed the cervical MRI and found severe spinal stenosis at C5-C6 with mass effect on the spinal cord. (Tr. 672). Dr. Krivosheya ordered a thoracic MRI to rule out even worse spinal cord compression at the thoracic spine that could account for myelopathy in the lower extremities. (*Id.*).

On June 24, 2020, during a telehealth appointment with Dr. Krivosheya, Mr. Belcher continued to complain of lower back pain radiating down both legs, but stronger on the left side. (Tr. 668). He also endorsed difficulty driving and issues with balance. (*Id.*). The thoracic MRI findings did not require surgical intervention, but based on the cervical findings, Dr. Krivosheya recommended an anterior cervical discectomy and fusion. (Tr. 670).

B.   **Evidence Submitted to Appeals Council After the ALJ's Decision**

On April 12, 2021, Mr. Belcher met with Scott Hoffman, D.O., via telehealth appointment for follow-up related to his back pain. (Tr. 215). Mr. Belcher reported modest pain control with Cymbalta. (*Id.*). Dr. Hoffman prescribed Tramadol for symptom improvement and referred him for pain management. (*Id.*).

A lumbar MRI, dated April 27, 2021, revealed severe spinal canal narrowing at L4-L5 with central disc extrusion, mild to moderate spinal canal narrowing at L3-L4, severe foraminal narrowing laterally at L4-L5 and L5-S1 as well as on the left at L3-L4, and moderate to severe foraminal narrowing on the right side at L3-L4. (Tr. 16). A cervical MRI revealed severe spinal canal narrowing at C5-C6, moderate to severe spinal canal narrowing at C6-C7 with signal abnormality of the cord, moderate spinal canal narrowing at C3-C4 and C4-C5, and severe foraminal narrowing bilaterally at C5-C6 and C6-C7. (Tr. 74).

On May 19, 2021, Matthew Jaykel, M.D., performed an anterior cervical discectomy and fusion procedure on Mr. Belcher. (Tr. 10). On May 20, 2021, Mr. Belcher felt well and requested that he be released. (Tr. 84).

On October 26, 2021, Mr. Belcher met with Dr. Hoffman for acutely worsening, uncontrolled lumbar symptoms, including muscle spasms in the low back and legs. (Tr. 221-22). Physical examination revealed decreased range of motion in the lower extremities and an antalgic gait. (Tr. 226). Dr. Hoffman noticed Mr. Belcher used a cane for ambulation. (*Id.*). Mr. Belcher received an intramuscular shot of Toradol for pain and was told to follow up with his orthopedic surgeon. (Tr. 222). On December 13, 2021, Mr. Belcher underwent lower back surgery to remove and replace instrumentation at L3-L4. (Tr. 10).

On January 25, 2022, Mr. Belcher returned to his orthopedic surgeon and reported doing well overall and noted continued improvement in low back pain and radiating leg pain, numbness, and tingling. (Tr. 27). His surgeon recommended starting physical therapy for core strengthening. (*Id.*).

Lumbar spine imaging, dated March 8, 2022, revealed stable instrumentation positioning, minimal degenerative changes in the lumbar spine, and mild degenerative changes in the bilateral hip joints and bilateral sacroiliac joints. (Tr. 15). That day, Mr. Belcher met with his orthopedic surgeon and complained of midline low back pain and "weakness and buckling" in the legs with prolonged walking. (Tr. 10). Mr. Belcher reported intermittent swelling in the legs but was able to increase his functional activities. (Tr. 11). He reported continued improvement in low back pain and radiating leg pain. (Tr. 16). The surgeon recommended Mr. Belcher increase his activity as tolerated and continue with physical therapy. (Tr. 17).

5

The Appeals Council determined the evidence from April and May 2021 did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2). It determined the evidence from October 2021 through March 2022 did not relate to the period at issue because the ALJ decided Mr. Belcher's case through June 2, 2021. (*Id.*).

### III. MEDICAL OPINIONS

On September 11, 2020, state agency medical consultant Abraham Mikalov, M.D., reviewed records through June 24, 2020, and determined Mr. Belcher had the residual functional capacity (RFC) to occasionally lift 20 pounds, 10 pounds frequently; stand and/or walk and sit for about six hours each in an eight-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently stoop, kneel, and crouch; and occasionally crawl. (Tr. 300-01). On October 29, 2020, Elizabeth Das, M.D., re-evaluated Mr. Belcher's medical records and adopted Dr. Mikalov's RFC. (Tr. 310-14).

### IV. ADMINISTRATIVE HEARING

The ALJ summarized Mr. Belcher's hearing testimony as follows:

> The claimant reports back and leg pain that is constant with a feeling of weakness. He testified to using a cane to ambulate. He has difficulty standing and walking for more than a few minutes or sitting for longer than 5 minutes without pain. He is able to get the mail, which is approximately one-quarter of a mile away, but it causes him pain. The claimant lives with his wife and six-year old daughter. His wife is recovering from cancer, leaving the claimant to manage the household chores and care of their daughter, such as getting her ready for school. He testified that he has difficulties, but does it as because[*sic*] it is necessary. The claimant is able to drive and does so on occasion, but reports difficulty due to his neck pain; however, he does not currently have a valid driver's license. He reports [he] alternates from sitting to standing to lying down throughout the day, managing chores in between resting periods.

(Tr. 56).

THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since April 17, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, lumbar, status post multiple surgeries; spinal stenosis, lumbar and cervical spine; asthma; hyperlipidemia; essential hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with certain restrictions. Specifically, the claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights or with moving mechanical parts and can never perform tasks requiring the operation of a motor vehicle.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 9, 1974, and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

      national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2020, the alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 54-61).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference.

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process–found at 20 C.F.R. §§ 404.1520 and 416.920–to determine if a claimant is disabled:

9

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION & ANALYSIS

Mr. Belcher requests remand for the ALJ to consider the new and material evidence he submitted to the Appeals Council. (Pl.'s Br., ECF #9, PageID 974). The Commissioner argues the evidence is not new or material and therefore Mr. Belcher is not entitled to remand. (Comm'r's Br., ECF #11, PageID 990).

The Sixth Circuit holds that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the

district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision"; it can only consider the evidence as the basis for a Sentence Six remand. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). A Sentence Six remand allows a district court to remand a case to the Commissioner for consideration of additional evidence if the party seeking remand shows "there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) ("The statute thus requires that before a social security claim will be remanded for consideration of additional evidence, the claimant must prove that new evidence existed which would be material to the determination of his disability claim.").

For the purposes of § 405(g), evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). "Evidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented." *Langford v. Astrue*, No. 1:09CV1629, 2010 WL 3069571, at *5 (N.D. Ohio Aug. 3, 2010) (citing cases). A claimant demonstrates "good cause" by showing a reasonable justification for the failure to acquire and present the evidence at the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). This requires more than just showing evidence did not exist at the time of the ALJ's decision; the Sixth Circuit takes a "harder line on the good cause test," and requires the claimant to "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Saliba v. Comm'r of Soc. Sec.*, No. 1:21-CV-1908, 2022 WL

11

18811452, at *9 (N.D. Ohio Nov. 3, 2022) (noting that "a claimant cannot simply point to the fact that the evidence was not created until after the ALJ hearing but must establish good cause for why []he did not cause the evidence to be created and produced until after the administrative proceeding"), *report and recommendation adopted,* 2023 WL 2139372 (N.D. Ohio Feb. 21, 2023).

Here, Mr. Belcher requested review of the ALJ's decision and submitted evidence from April and May 2021 and from October 2021 through March 2022. (Tr. 9, 20, 67, 213). The Appeals Council determined the evidence from April and May 2021 did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2). It determined the evidence from October 2021 through March 2022 did not relate to the period at issue because the ALJ decided Mr. Belcher's case through June 2, 2021. (*Id.*).

The evidence Mr. Belcher submitted to the Appeals Council is new because the treatment records pertain to evidence not in existence at the time of the February 2021 administrative hearing. Mr. Belcher claims the evidence is material because it "relates to the conditions discussed at [his] hearing and in the ALJ's decision." (ECF #9 at PageID 975). He also claims that good cause exists for not filing this evidence because one of the surgeries was performed just prior to the ALJ's decision and the other was performed after, and "thus, said results were not available at the time of the ALJ decision." (ECF #9 at PageID 976). These arguments are misplaced.

First, the bare fact the evidence was not created until after the administrative hearing does not meet the Sixth Circuit's requirement to give a valid reason for failing to obtain evidence prior to the hearing. Moreover, failure to notify the ALJ of the need to consider additional medical evidence at or following the hearing prevents a claimant from later asserting good cause to submit new evidence. *Cline,* 96 F.3d at 149; *see also Cranfield v. Comm'r, Soc. Sec.,* 79 Fed. App'x 852, 859

(6th Cir. 2003). At the February 25, 2021, administrative hearing, Mr. Belcher asked the ALJ to hold the record open for two weeks to submit additional medical records. (Tr. 234). Due to difficulty obtaining the requested records, Mr. Belcher made additional requests to the ALJ to hold the record open on March 11 and 25, April 8 and 22, and May 5, 12, and 18, 2021. (Tr. 379-80, 469-74). On May 25, 2021, rather than inform the ALJ of his May 19 surgery and request additional time to obtain those records, Mr. Belcher invited the ALJ close the record. (Tr. 475). According to counsel, Mr. Belcher was aware of the consequences of this decision. (*Id.*). Mr. Belcher had the opportunity to inform the ALJ of additional forthcoming evidence and request the record remain open but declined to do so. As such, Mr. Belcher has not established good cause for his failure to obtain the April and May 2021 records.

As for the records pertaining to October 2021 through March 2022, they are not material because they do not concern Mr. Belcher's condition prior to the ALJ's decision. *Langford*, 2010 WL 3069571, at *5. In October 2021, four months after the ALJ's decision, Mr. Belcher sought treatment for worsening of his lumbar radiculopathy. (Tr. 222). But evidence of subsequent deterioration in a claimant's condition after the ALJ's decision is immaterial. *Sizemore*, 865 F.2d at 712.

Mr. Belcher is not entitled to remand under 42 U.S.C. § 405(g) because he has not met his burden of showing "there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Therefore, I recommend the District Court decline Mr. Belcher's request to remand the matter.

13

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: August 24, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). **Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). **Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). **Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). **The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).